ROYAL PLAN, INC. *vs.* RELIABLE AUTO FINANCE CORP.

DECEMBER 18, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This case in replevin was tried before a justice of the superior court, without intervention of a jury, and resulted in a decision for the plaintiff. It is before us solely on the defendant's exception to this decision.

The testimony shows that, on March 30, 1934, the Silver Lake Loan & Investment Company, hereinafter referred to as Silver Lake Co., loaned $500 to one Domenico LaFazia, hereinafter called the borrower. As security for this loan, the borrower gave Silver Lake Co. a mortgage on certain of his real estate and also a mortgage on his 1934 Pontiac automobile, which mortgage was recorded. The Silver Lake Co., for some reason not too clearly appearing, then delivered to the borrower what purported to be a conditional sale agreement covering the same automobile, which never had been in the possession of Silver Lake Co., the borrower having retained its possession throughout the transaction.

On June 6, 1935, the borrower bought a new 1935 Pontiac automobile from another agency, Regine Motors, Inc., trad-

ing in his 1934 Pontiac at an agreed valuation of $609 toward the purchase price of $924. The balance of the purchase price was represented by a note, which was paid in full within three months, at which time Regine Motors, Inc. gave the borrower a receipted invoice. This new 1935 Pontiac is the subject of the replevin in the action before us.

The testimony on behalf of the plaintiff tends to show that the borrower, on September 7, 1935, indorsed over to the Silver Lake Co. the original invoice to the 1935 Pontiac from Regine Motors, Inc., which invoice was referred to as the bill of sale, and that Silver Lake Co. in turn executed a conditional sale agreement with the borrower, covering this automobile. However, this original invoice or bill of sale to the borrower was not introduced in evidence, having been "misplaced or lost some place", according to an officer of the Silver Lake Co. who testified for the plaintiff.

The defendant's evidence, on the other hand, tends to show that this invoice or bill of sale was not indorsed by the borrower to the Silver Lake Co. on September 7, 1935, but was merely delivered to it in blank as security for the previous loan; and that the "automobile installment contract", that is, the conditional sale agreement covering the 1935 Pontiac, was not actually executed until several months later, but was antedated by the Silver Lake Co. as of September 7, 1935.

On December 23, 1935, the defendant loaned the borrower $400 at his request and received from him a chattel mortgage of the new 1935 Pontiac automobile as security for that loan. This chattel mortgage was duly recorded by the defendant after investigation showed no previous mortgage of record on the 1935 Pontiac.

On April 10, 1936, the Silver Lake Co. apparently took possession of the 1935 Pontiac for default by the borrower in payments due under the 1934 loan, and immediately sold it to the plaintiff, which, on that same day, delivered it to the borrower's brother, Vincent LaFazia, under a conditional

sale agreement. No claim is made that the brother had any beneficial interest in the first 1934 automobile or in this new 1935 Pontiac, he having taken conditional title thereto in his name merely to accommodate the borrower. Subsequently, the defendant possessed itself of this same 1935 automobile for default by the borrower in his payments under the chattel mortgage and note held by it, whereupon the plaintiff brought this suit in replevin.

Possession of the 1935 Pontiac was at no time given by the borrower to the Silver Lake Co. and no additional consideration passed between the parties in the transaction on September 7, 1935. At this time, the borrower still owed the Silver Lake Co. a balance of about $400 on its original 1934 loan to him. There is no evidence of a discharge or cancellation by the Silver Lake Co. of the mortgage and note delivered to it by the borrower in 1934, which it then received *as security* for its loan; nor is there any evidence that the alleged conditional sale agreement of that year covering the 1934 Pontiac was ever returned to the borrower, or was otherwise cancelled by the Silver Lake Co. on or after September 7, 1935. It is admitted that none of the papers and documents executed and delivered by the borrower to Silver Lake Co. relating to the 1935 Pontiac were ever recorded. Furthermore, the defendant's good faith and its entire lack of knowledge of any of these previous transactions between the borrower and the Silver Lake Co. concerning the 1935 Pontiac is not questioned.

With the exception of the conflicting testimony as to whether the original invoice or bill of sale to the 1935 Pontiac was indorsed by the borrower and delivered to Silver Lake Co. or was merely delivered to it by the borrower in blank as security for the previous loan, and whether the conditional sale agreement, dated September 7, 1935, from Silver Lake Co. to the borrower was actually executed on that date or later, all the remaining evidence in the case is clear and substantially undisputed.

The trial justice found, on the conflicting evidence, that the original invoice covering the 1935 Pontiac in question was indorsed and delivered to Silver Lake Co. on September 7, 1935, and also that the conditional bill of sale to the borrower, covering the same automobile, was dated at the same time, as the plaintiff contended. Being unable to say that the trial justice was clearly in error in his findings from the conflicting evidence on the two points just mentioned, we shall accept such findings in that regard as determined facts. As to the rest of the evidence, which is undisputed, this court is not bound by the inferences drawn by the trial justice therefrom. See *People's Savings Bank* v. *Rynn,* 57 R. I. 411, 190 A. 440, and cases cited.

The real question in this case is whether the whole transaction of September 7, 1935, between the Silver Lake Co. and the borrower was one which transferred the 1935 Pontiac automobile only as substituted security for the existing loan, thus becoming in legal effect a chattel mortgage; or whether it was a transfer of absolute title to that automobile, as contended by the plaintiff.

The defendant's contention that the transaction was intended and was in reality a chattel mortgage, regardless of its form, is legally sound and is supported by the undisputed evidence. The form alone of such a paper transaction, as here, does not necessarily determine its real character. The statute, G. L. 1923, chap. 302, sec. 10, relating to the recording of chattel mortgages, is not to be defeated by recourse to methods and forms which do not fairly represent the transaction in its true character. See *Harris* v. *Chaffee,* 17 R. I. 193; *New England Auto Co.* v. *St. Germaine,* 45 R. I. 225.

The nature of the first transaction between the borrower and the Silver Lake Co. in 1934 is established beyond question by the evidence. The transcript discloses clearly that Silver Lake Co. loaned the borrower $500 in March 1934 and received, as security for that loan, a mortgage on the bor-

rower's land and also a chattel mortgage on his 1934 Pontiac automobile.

Witness Fiore, an officer of Silver Lake Co. who apparently conducted all negotiations in question and upon whose testimony the plaintiff relied, testified in cross-examination as follows: Q. "Mr. Fiore, the Silver Lake Loan Company took a mortgage on this real property of Mr. LaFazia on Prudence Avenue, did it not?" A. "Yes; for a loan of $500 he gave us a mortgage on that land and also a mortgage on the automobile." Q. "Isn't this a fact: that he gave you a bill of sale of a Pontiac automobile, and the Silver Lake Loan Company in return made out a conditional sale contract?" A. "Which one are you referring to, now?" Q. "This is the original, first Pontiac car?" A. "The 1934?" Q. "Yes." A. "We put a mortgage on that car." Q. "You didn't put the mortgage on record, did you?" A. "We did. Yes." Q. "Are you positive of that?" A. "Positive." This evidence is nowhere contradicted. On the contrary, it is substantially confirmed in other language by the testimony of the defendant.

Keeping in mind, therefore, that the 1934 Pontiac was essentially security for the loan under the chattel mortgage held by Silver Lake Co., the true nature of the second transaction on September 7, 1935, involving the 1935 Pontiac, is readily understood. On this point, the same witness Fiore testified, without contradiction, that "His (the borrower's) bill of sale, together with the installment contract, was given to us to replace the old 1934 car", and that "The consideration was that he gave us that car (1935) to replace the 1934." In addition, he also testified as follows: Q. "He gave it to replace it as security for that old loan; isn't that right?" A. "Yes; that is right."

The borrower corroborates this by his following testimony: Q. "Whatever did occur was for the purpose of placing this car in the same place as the car that you had

sold or traded in, you traded it (in) for a new car?" A. "Yes, sir." From this and other evidence there can be little doubt that Silver Lake Co. intended and demanded merely that the 1935 Pontiac be substituted for the 1934 Pontiac, upon which latter it held a chattel mortgage as security for the original loan and note.

The trial justice expressed the opinion that the witness Fiore was driven to admit the above material fact only under the pressure of persistent cross-examination. A careful examination of the record, however, discloses that the same witness testified substantially to the same fact both in direct examination and at other places when not so pressed.

If any doubt existed from the testimony about the nature of such transaction and the plaintiff's rights here, it is cleared up, in our opinion, by the written evidence introduced by the plaintiff itself. Silver Lake Co. transferred to this plaintiff on April 10th or 11th, 1935, whatever interest and documents of title it held in and to the borrower's 1935 automobile. Plaintiff's exhibit 3. The consideration for this transfer was $437.01 which the witness Fiore testified "was the money he owed us, plus a few extra dollars." This consideration was paid by the plaintiff's check, introduced in evidence as plaintiff's exhibit 4.

On that check the following indorsement appears: "In full payment for one 1935 Pontiac-8 2 door sedan Serial No. 8AA-253009 Engine No. 8-26710 and one mortgage note signed and Domenico Lafazia and wife Palma face amount of said note is $500.00 dated March 30th, 1935. Silver Lake Loan & Invest. Co. G. T. Fiore."

It thus appears clearly that the plaintiff purchased all the interest and papers of Silver Lake Co. in and to the 1935 Pontiac knowing that such interest was definitely connected with the borrower's original chattel mortgage and mortgage note to Silver Lake Co. in the face amount of $500, representing security for its original loan to him, and was not an absolute title.

The date of the note, as stated in the indorsement on the check, March 30, *1935,* is evidently a typographical error, because there is no claim and no evidence of any transaction on that date relating to the 1935 Pontiac or to any note or mortgage connected therewith. Moreover, the other evidence in the case definitely connects the note, so purchased by the plaintiff, with the only chattel mortgage note and balance due under it to the Silver Lake Co. from the borrower, and this was based on the original loan and mortgage note of March 30, *1934.*

After consideration of the entire evidence, which is mostly undisputed, we are of the opinion that the transaction of September 7, 1935, whatever its form, was intended by the parties and was, in substance and in legal effect, a chattel mortgage covering the 1935 Pontiac; that this chattel mortgage was not recorded, nor was possession of the automobile given to or taken by Silver Lake Co., so as to satisfy the requirements of the statute, G. L. 1923, chap. 302, sec. 10; and that, while good between the parties thereto, it was not binding upon the defendant, whose good faith and lack of knowledge of any of the previous transactions between the borrower and Silver Lake Co. or the plaintiff, are nowhere questioned.

In the circumstances, the defendant had a prior right to the possession of this automobile as against the plaintiff, and therefore the decision of the trial justice in favor of the plaintiff for its possession was erroneous.

The defendant's exception is sustained. The plaintiff may, if it shall see fit, appear before this court on December 29, 1937, and show cause, if any it has, why the case should not be remitted to the superior court with direction to enter judgment for the defendant.

*Frank H. Wildes,* for plaintiff.

*William H. McSoley, Waldman & Waldman,* for defendant.